**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PAUL R. WALLACE
    JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Steven T. Margolin
Bryan T. Reed
GREENBERG TRAURIG, LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801

D. McKinley Measley
Alexander F. Hoeschel
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
Wilmington, Delaware 19899

Submitted: March 5, 2024
Decided: March 25, 2024
Corrected: March 26, 2024

RE: *Thompson Street Capital Partners, IV, L.P., in its capacity as Members'*
    *Representative v. Sonova United States Hearing Instruments, LLC*
    <u>C.A. No. 2023-0922-PRW</u>
    Defendant's Motion to Dismiss

Dear Counsel:

Before the Court is the Rule 12(b)(6) Motion to Dismiss filed by Defendant

Sonova United States Hearing Instruments, LLC. For the reasons explained below,

that motion is **GRANTED**.

## I. BACKGROUND[1]

Plaintiff Thompson Street Capital Partners, IV, L.P. ("Thompson Street"),

acting in its capacity as the Members' Representative, brings this action to recover

---

[1] The Court issues this Letter Opinion in lieu of a more formal writing mindful that the parties
have a fuller understanding of and familiarity with the factual background and operative
agreements than is recounted herein.

escrowed funds.[2] Thompson Street alleges Defendant Sonova United States Hearing Instruments, LLC ("Sonova") provided a pretextual, invalid notice of its claims objection in order to avoid releasing the escrowed funds. It seeks an order that Sonova's notice cannot serve as a basis to withhold escrowed funds, and a mandatory injunction to release the funds.[3]

## A. THE MERGER AGREEMENT

Sonova acquired equity interests in Alpaca Group Holdings, LLC and Alpaca Blocker Corp. (together with Alpaca Group Holdings, LLC "Alpaca") through the Agreement and Plan of Merger (the "Merger Agreement") dated January 13, 2022.[4] Section 9.2 of the Merger Agreement provided Sonova indemnification rights against Thompson Street based on breaches of certain representations and warranties.[5] Section 9.1 prescribes that claims based on certain breaches of representations and warranties will survive until eighteen months after Closing ("Survival Date").[6]

Section 9.3.2 describes the notice procedures to submit an indemnification

---

[2]  Verified Complaint ("Compl.") ¶ 1.

[3]  *Id*. Prayer for Relief.

[4]  *See* Defendant's Opening Brief in Support of its Motion to Dismiss ("Op. Br."), Ex. A ("Merger Agreement") (D.I. 10).

[5]  Merger Agreement § 9.2.

[6]  *Id*. § 9.1.  The Court assumes the Survival Date coincides with the Escrow Deadline, described below.  *See* Compl. ¶ 13.

claim.[7] Sonova must give Thompson Street:

> reasonably prompt written notice [of a Claim], but in any event not later than 30 days after [Sonova] becomes aware of such Claim, provided that no delay on the part of [Sonova] in notifying [Thompson Street] will relieve the Merger Parties from any obligation under this Article IX, except to the extent such delay actually and materially prejudices the Merger Party. Such notice by [Sonova] will describe the Claim in reasonable detail, will include the justification for the demand under this Agreement with reasonable specificity, will include copies of all available material written evidence thereof, and will indicate the estimated amount, if reasonably practicable, of Damages that has been or may be sustained by [Sonova]. [Sonova] shall have no right to recover any amounts pursuant to Section 9.2 unless the Purchaser notifies the Members' Representative in writing of such Claim pursuant to Section 9.3 on or before the Survival Date.[8]

Section 9.3(c), cited therein, states that "[t]he Indemnity Escrow Fund shall be [Sonova's] sole and exclusive source of recovery for Damages under this Agreement, other than claims for Fraud, Pre-Closing Tax Liability and breaches of Fundamental Representations."[9] In a related escrow agreement (the "Escrow Agreement"), "the Indemnity Escrow Fund" means $7,750,000, which is the amount to be deposited with the escrow agent.[10]

B. THE ESCROW AGREEMENT

The Escrow Agreement also included notice procedures; *those* procedures

---

[7]   Merger Agreement § 9.3.2(a).

[8]   *Id*. § 9.3.2(a).

[9]   *Id.* § 9.3(c).

[10]   *See* Compl., Ex. B ("Escrow Agreement") Recitals; Compl. ¶ 14.

governed the release of the Indemnity Escrow Fund. Under Section 3(a)(ii) of the Escrow Agreement, if Sonova "determines in good faith that it…has a claim to a payment from the Indemnity Escrow Fund pursuant to <u>Article IX</u> of the Merger Agreement (a '<u>Claim</u>')," it must provide written notice of the Claim to the escrow agent and Thompson Street.[11] Like the Merger Agreement, the written notice "shall specify in reasonable detail the nature and dollar amount of the Claim."[12] But unlike the Merger Agreement, it does not require "copies of all available material written evidence."[13]

"[E]ach Claim shall be deemed to be an '<u>Open Claim</u>' and the Escrow Agent shall reserve within the Indemnity Escrow Amount an amount equal to the amount of such Open Claim (such reserved amount, the '<u>Claim Reserve</u>')."[14] Section 3(a)(i) of the Escrow Agreement then requires that the Indemnity Escrow Fund "shall be released . . . on August 29, 2023 to the extent the balance of the account exceeded the amount asserted for any "Open Claims" (the "Escrow Deadline").[15]

## C. THE NOTICE

On August 25, 2023, Sonova delivered a two-page written notice (the

---

[11] Escrow Agreement § 3(a)(ii).

[12] *Id*.

[13] Merger Agreement § 9.3.2(a).

[14] Escrow Agreement § 3(a)(ii).

[15] *Id.* § 3(a)(i).

"Notice") to Thompson Street and the escrow agent of its claims for indemnification pursuant to the notice procedures of Section 9.3.2 of the Merger Agreement and Section 3(a)(ii) of the Escrow Agreement.[16] The Notice raised concerns of improper billing practices, such as services that were never provided, but nevertheless billed and reimbursed.[17] Specifically, it alleges that items and services were improperly billed under the names and billing numbers of clinicians who did not personally

---

[16] *See* Compl., Ex. C. ("Notice"). Paragraphs three and four of the Notice state that:

> Purchaser has become aware of certain billing practices of the Company, its Subsidiaries and the Practice Entities that Purchaser believes are not in compliance with applicable Laws and/or third-party payor reimbursement rules or other requirements. Specifically, Purchaser believes certain items and/or services provided by the Company, its Subsidiaries and the Practice Entities to patients in multiple states (including without limitation Arkansas, Michigan, New Jersey and Tennessee) were improperly billed under the names and billing numbers of clinicians who did not personally provide the items and/or services to those patients. As a result of those billing practices, Purchaser believes the Company, its Subsidiaries and the Practice Entities have billed and received payment or reimbursement to which they are not entitled under applicable Laws and/or third-party payor reimbursement rules and other requirements. The improper billing and receipt of payment or reimbursement to which they are not entitled constitute breaches of the representations and warranties of the Company contained in Sections 3.8, 3.11, and 3.21 of the Merger Agreement. Pursuant to Section 9.2 of the Merger Agreement, the Merger Participants agreed to indemnify and hold harmless Purchaser from, against and in respect of any Damages resulting from breaches of the representations and warranties contained in the Merger Agreement.

> As of this date, Purchaser's investigation and analysis of these matters is continuing, and the aggregate amount of Damages relating to the Claim is not known or estimable with certainty. Based upon Purchaser's investigation and analysis to date, Purchaser's maximum Damages relating to the Claim are in excess of the Indemnity Escrow Fund. Purchaser will supplement this Claim and Claim Notice as reasonably necessary as Purchaser learns additional information and concludes its investigation and analysis. Escrow Agent is hereby directed to establish a Claim Reserve in the full amount of the Indemnity Escrow Fund.

[17] *Id.*

-5-

provide the items and/or services to those patients.[18] The Notice identifies four states where the allegedly improper billing practices occurred,[19] as well as the provisions in the Merger Agreement allegedly breached.[20] The Notice states that damages are in excess of the Indemnity Escrow Fund amount.[21]

Accordingly, Sonova directed the escrow agent to not release the funds.[22] Based on communications with Alpaca's former officers and a continuing employee, Thompson Street believes that Sonova had knowledge of the facts underlying its claims before the 30-day deadline in Section 9.3.2 of the Merger Agreement.[23]

Thompson Street initiated this action via its Verified Complaint alleging that the Notice was vague and untimely.[24] Thompson Street seeks declaratory relief (Count I) and specific performance for release of the Indemnity Escrow Fund (Count II). In its motion to dismiss, Sonova argues that the Notice satisfied the parties' contractual requirements to prevent the release of the Indemnity Escrow Fund.[25]

---

[18]  *Id.*

[19]  *Id.*

[20]  *Id.*

[21]  *Id.*

[22]  *Id.*

[23]  Compl. ¶ 24.

[24]  *Id.* ¶¶ 20, 24.

[25]  Op. Br. at 10-13.

## II. STANDARD OF REVIEW

In resolving a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[26] The Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[27]

Contract interpretation is a question of law and can in the proper instance be resolved on a motion to dismiss.[28] "But, to achieve dismissal, the motion must be supported by unambiguous contract terms."[29]

A complaint fails under Rule 12(b)(6) if the plaintiff's prayers don't demonstrate that is reasonably conceivable that it would be entitled to the relief

---

[26] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[27] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[28] *E.g., Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Under Delaware law, the proper interpretation of language in a contract is a question of law. Accordingly, a motion to dismiss is a proper framework for determining the meaning of contract language.").

[29] *Blue Cube Spinco, LLC v. Dow Chemical Co.*, 2021 WL 4453460, at *7 (Del. Super. Ct. Sept. 29, 2021) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003); *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 783 (Del. 2012).

sought.[30]  "Put differently, a claim targeted for dismissal will survive [only] if 'a possiblity of recovery' can be divined from it."[31]

## III.  DISCUSSION

Recall, the specific claims Thompson Street penned and the relief sought. This action **is** about the release of the Indemnity Escrow Fund; it **is not** about whether Sonova has waived its right to pursue indemnification claims on the grounds that it failed to submit a valid notice by the Escrow Deadline.[32]  Namely, the action is about whether Thompson Street is entitled to a release of the Indemnity Escrow Fund on the basis that the Notice sent to the escrow agent was invalid.  As now explained, the Notice was valid for the purpose of stopping a release of the Indemnity Escrow Fund.

### A. TIMELINESS

The Notice was timely.  The Escrow Deadline was August 29, 2023.[33]  Sonova

---

[30]  *See Cent. Mortg.*, 27 A.3d at 537; *see also VLIW Technology*, 840 A.2d at 606 (Del. 2003) (a claim survives under Rule 12(b)(6) "unless it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts which might be proven to support the allegations in the complaint.").

[31]  *Unbound Partner's Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (quoting *Firefighters' Pension Sys. of Kansas Dity, Mo. Tr. v. Presidio, Inc.*, 2021 WL 298141, at *15 (Del. Ch. Jan. 29, 2021)); *Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility. . . .'").

[32]  *See* Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss at 1 (D.I. 13) ("This case is **not** about the existence of an indemnification provision or the merits of any purported claim under that provision.") (bold and underline in original); Compl. ¶ 39.

[33]  Escrow Agreement § 3(a)(i).

sent the Notice on August 25, 2023.[34] Thus, the Notice was timely under the Escrow Agreement.

For thoroughness, the Court analyzes whether it was timely under the Merger Agreement. Section 9.1 requires assertion of a claim on or before the Survival Period, *i.e.*, eighteen months after closing.[35] In this case, Sonova met that requirement by filing on August 25, 2023.[36] Sonova must also provide "reasonably prompt" written notice "not later than 30 days after [Sonova] becomes aware of such claim."[37] Thompson Street alleges that various communications indicate that Sonova was aware of the underlying facts giving rise to the claims as early January 2023.[38]

Yet, even if Sonova had knowledge of the underlying facts to trigger the 30-day notice requirement, Thompson Street hasn't pled the actual and material prejudice needed to deem the notice untimely under Section 9.3.2(a) of the Merger Agreement. Section 9.3.2(a) states that "no delay on the part of [Sonova] in notifying [Thompson Street] will relieve the Merger Parties from any obligation under this <u>Article IX</u>, except to the extent such delay actually and materially

---

[34] Compl. ¶ 18.

[35] Merger Agreement § 9.1.

[36] Compl. ¶ 18.

[37] Merger Agreement § 9.3.2(a).

[38] *Id.* ¶ 24.

prejudices the Merger Party."[39]

Thompson Street makes three conclusory statements that Sonova's delay resulted in missed opportunities to reduce the damages associated with the improper billing practice.[40] Because the Court need not accept such vague and conclusory statements unsupported by facts, Thompson Street hasn't pled that the delay caused *actual and material* prejudice. Thus, the Notice was timely.

## B. SPECIFICITY

Section 3(a)(ii) of the Escrow Agreement tracks Section 9.3.2 of the Merger Agreement. Section 9.3.2 of the Merger Agreement requires that the notice (1) describe the claim in reasonable detail; include (2) the justification for the demand; (3) copies of all available material written evidence thereof, and (4) any estimated amount of damages, if reasonably practicable.[41] Section 3(a)(ii), on the other hand, requires that the notice "specify in reasonable detail the nature and dollar amount of the Claim."[42]

The Notice satisfies Section 3(a)(ii) of the Escrow Agreement. The Notice

---

[39] Merger Agreement § 9.3.2(a).

[40] Compl. ¶ 25. Specifically, Thompson suggests that the delay caused prejudice, including "(a) increasing the risk of excess Damages by disregarding contractual and statutory refund/repayment periods; (b) negating the Parties' ability to negotiate with applicable third-party payors in a timely manner where due credit would be given; and (c) potentially implicating a greater period of noncompliance in any final damages." *Id.*

[41] Merger Agreement § 9.3.2(a).

[42] Escrow Agreement § 3(a)(ii).

states that Sonova "has become aware of certain billing practices…that are not in compliance with applicable laws and/or third-party payor reimbursement rules or other requirements."[43]   The Notice continues and elaborates on the allegedly improper billing practices, stating that Sonova:

> believes certain items and/or services provided by the Company, its Subsidiaries and the Practice Entities to patients in multiple states (including without limitation Arkansas, Michigan, New Jersey and Tennessee) were improperly billed under the names and billing numbers of clinicians who did not personally provide the items and/or services to those patients.

The Notice also identifies the allegedly breached representations, citing to Section 3.8, 3.11 and 3.21 of the Merger Agreement.  It further notes that its investigation into the matters is pending.  And, it states that damages from these allegedly improper billing practices is in excess of the Indemnity Escrow Fund.

Section 3(a)(ii) does not require Sonova to present every minute detail or prove the merits of its claims.  Indeed, Section 3(a)(ii) does not require production of all available written evidence.  Consistent with its limited scope and purpose, the Notice need only give notice to the escrow agent of Sonova's pending indemnification claims.  It does just that.  Count I will be dismissed.

Sonova also seeks to dismiss Count II.  Both because a request for specific performance is a remedy, and not a standalone claim, and because that remedy is tied

---

[43]   *See* Notice.

the Count I's viability, Count II will be dismissed.[44]

## IV.  CONCLUSION

The notice provisions at issue here are unambiguous and Thompson Street's prayers for relief are fatally lacking.  Sonova's motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

Paul R. Wallace, Judge*

---

[44]   *See Quadrant Structured Prod. Co. v. Vertin,* 102 A.3d 155, 203 (Del. Ch. 2014) ("Injunctions are a form of relief, not a cause of action. This court will determine what remedy (if any) it will award after deciding the merits of Quadrant's claims, taking into account the wrongs (if any), the nature of the harm, the facts and circumstances, and any other equities of the case. As a technical matter, Counts III and VI are dismissed because they seek remedies rather than assert claims.  Other than cleaning up the pleadings, this ruling has no effect on the case. In the remedial stage of this action, Quadrant may seek injunctive relief, and the court has not ruled out the possibility of a permanent injunction, if warranted.").

*   Sitting by designation of the Chief Justice pursuant to *In re Designation of Actions Filed Pursuant to 8 Del. C. § 111* (Del. Feb. 23, 2023) (ORDER).